## Hutchings v. FSS Corporation

*Frank A. Orban, Jr., C. Gregory Franz,* for plaintiff.
*John J. Dirienzo, Jr.,* for defendants.

COFFROTH, *P.J.,* January 21, 1982—We have for consideration and disposition defendants' preliminary objections (motion to strike paragraph 14; motion to strike and demurrer to Count one; motion to strike and demurrer to Count two) to plaintiff's complaint in trespass and assumpsit. The motions to strike state as their specific grounds that:

(1) Paragraph 14 of the general averments of the complaint "contain averments of scandalous, impertinent and irrelevant matters"; and

(2) Count one "fail[s] to show any breach of contract by the defendants"; and

(3) Count two "fails to allege the acts required by law to permit recovery for punitive or exemplary damages".

Only points (1) and (3) above were briefed and pressed at argument, and will be considered. The case is best analyzed and understood by dealing first with point (3) (punitive damages) to which point (1) (alleged forgery) most closely relates.[1]

---

1. The demurrers state merely that the complaint does "not contain allegations of fact sufficient to support plaintiff's claim" and do not, therefore, comply with Civil Rule 1028(a) requiring that: "Preliminary objections shall state specifically the grounds relied on." The Rule applies to demurrers. Spickler v. Lombardo, 32 Somerset L. J. 16, 18 (1976). Accordingly, the demurrers are not entitled to consideration by the court. See: Pittsburgh National Bank v. Garrity, 31 Somerset L. J. 333, 337 (1976); Pittman v. Trent, 30 Somerset L. J. 283, 288 (1975). We shall consider the demurrers only on the specific grounds set forth in the motions to strike. The court may treat a motion to strike as a demurrer. Spickler v.

Punitive Damages:

Count two of the complaint is in trespass for deceit, claiming compensatory and punitive damages. In order to justify punitive damages, it must appear that there was tortious conduct which is "outrageous", that is "acts done with a bad motive or a reckless indifference to the interests of others." W.W. Coal Company v. Pennsylvania National, 30 Somerset L. J. 69, 73, 75 D.&C.2d 621 (1975). Fraud, if severe, may be sufficiently outrageous to warrant punitive damages, as held in Spickler v. Lombardo, 31 Somerset L. J. 16, 32 (1976). But as stated in Weigle et al. v. Motors Insurance Corp. et al., 39 Somerset L. J. 109, 126, 19 D.&C.3d 449, 472 (1980):

"Bad faith conduct is not necessarily outrageous conduct. Even fraud is not necessarily outrageous conduct in all circumstances; hardly anyone would regard as outrageous the conduct of a parent who fraudulently obtained food for his starving infant. To be outrageous the conduct must be such a severe departure from prevailing moral values in terms of the evilness of motive or recklessness of the disregard of the victim's rights and interests, such an extravagant, shocking, anti-social and extremely offensive misdoing, as provokes instantly a cry of abhorrence." (Citations omitted.) See also Commonwealth v. Kitchen Appliances Distributors Inc. (no. 1), 41 Somerset L. J. 368, 27 D.&C.3d 91 (1981). It is against that background of legal princi-

Lombardo (no. 3), 34 Somerset L. J. 131, 3 D.&C.3d 591 (1977), cited in Goodrich Amram 2d §1017(b) :8, pocket supplement. Compare Yonai v. Northern Star, 30 Somerset L. J. 133, 73 D.&C.2d 467 (1975) cited in Goodrich Amram 2d §1017(b) :10, pocket supplement.

ple that we must analyze this complaint's averments to determine whether they are sufficient to warrant a finding of outrageous conduct.

This is an action by plaintiff-lessor against defendants-lessee on a strip mining lease, Count one of which is in assumpsit for alleged unpaid royalties and Count two of which is in trespass for damages for deceit. Only Count two is here involved. It alleges that the lease provides for coal removal royalties at a "rate of 6 percent F.O.B. coal pit price realization for each raw ton (but not less than $1.25 per ton) of merchantable raw coal as mined . . . not including transportation from lessor's land as received by the lessee. The selling price . . . shall be what we as the operator receive for the coal in a bona fide arms-length sale" (lease paragraph 2). The complaint further alleges that the lessee has sold the coal to a third party (Wills) under a contract by which the third party mines and removes the coal, at a price which the lessee is treating as the "F.O.B. coal pit price realization" for purposes of calculating and paying royalties, that said contract price "is not a bona fide arms-length sale and was knowingly executed and delivered with the full knowledge that the same did not constitute a bona fide arms-length sale", that "defendants intentionally, falsely, fraudulently, knowingly, wilfully, wantonly, and maliciously stated and represented to the plaintiff that the royalty paid was the full amount that was due and payable and that the price on which she was paid was a bona fide arms-length sale, when in fact the amounts paid were not the full amounts due and payable, and were not bona fide arms-length sales, and did thereby deprive the plaintiff of a substantial amount of royalty that would be due and owing to her." Count two's claim for relief demands "compensatory and exemplary damages from the defen-

dants in an amount in excess of $10,000, as to each type of damage", but the complaint does not otherwise fix or state a basis for calculation of the amount of damages suffered.

The complaint also alleges that while Wills was defendant's operator in mining and removing the coal for defendants (with plaintiff's knowledge), the state mining permits were issued to Wills without plaintiff's knowledge and in fact a filed consent thereto by landowner bears plaintiff's forged signature; that defendants have refused to furnish plaintiff with a copy of their contract with Wills; and that royalties have been paid on the basis of six percent of $24.50 per ton (with unexplained variations) as the sale price of the coal under the lease, but that such is not the sale price F.O.B. the mine as prescribed by the lease and is instead "the charge made by . . . [Wills] to mine and remove the coal for the defendants".

Since we are not considering either a general demurrer to or a motion for more specific pleading of the deceit cause of action, we shall assume that the elements of such cause of action are sufficiently pleaded. But, as clearly stated in Weigle et al. v. Motors Insurance Corp. et al., supra, it does not necessarily follow from sufficient pleading of a deceit claim that punitive damages are permissible. Golomb v. Korns, 261 Pa. Super. 344, 348, 396 A.2d 430 (1978).[2] Great specificity and detail are re-

---

2. "The essential elements of a cause of action for deceit are: (1) a material misrepresentation of fact, opinion, intention or law, (2) which was fraudulent, (3) upon which plaintiff justifiably relied, and (4) a loss which plaintiff's justifiable reliance was a substantial factor in causing," Spick v. Lombardo (no. 4), 36 Somerset L. J. 44, 52, 11 D.&C.: 327, 635 (1978). See also: Eden Roc v. Mullhauser, 416 Pa. 61, 204 A.2d 465 (1964); Restatement (Second) Torts §525. For the

quired to establish the outrage which is essential to an award of punitive damages. This complaint lacks that specificity and detail. Our view is based primarily on the following:

(1) Although the alleged forgery may be sufficient to establish evilness of motive and outrage as respect that particular action, and may be an evidentiary factor in the whole context of facts as finally developed, the forgery does not yet appear to be causally related to the misrepresentation which allegedly was fraudulent and caused the loss. At the moment, the forgery appears to be collateral to the alleged deceit cause of action.

(2) The averment that the sum of $24.50 per ton of coal on which royalties have been paid is the charge made by Wills under its contract for mining and removal of the coal, is made speculative by the other averments of the complaint that plaintiff has been denied access to and apparently has not seen that contract.

(3) The averment that the represented price upon which the royalties paid are based is not a price arrived at in a bona fide arms-length sale, while suffi-

---

definition of "fraudulent", see Restatement (Second) Torts §526-530 and §550-551, and Gary v. Masterson, 38 Somerset L. J. 347 (1979).

Although malice, intent and other conditions of mind may be averred generally, averments of fraud (or mistake) must be averred with particularity. Borelli v. Barthel, 205 Pa. Super. 442, 448, 211 A.2d 11 (1965); Civil Rule 1019(b). If pleading of a cause of action in deceit is not sufficiently specific, the remedy is a motion (preliminary objection) for a more specific pleading. Civil Rule 1017(b) (3); Long v. McAllister, 275 Pa. 34, 118 Atl. 506 (1922). On the relationship and distinction between the motion for more specific pleading and the demurrer, see Choder v. Seven Springs, 39 Somerset L. J. 62, 69-70 (1979).

cient to sustain a deceit claim, is materially weakened by failure by the complaint to allege what a bona fide arms-length price for the coal is or was. This is especially important since the very misrepresentations asserted as constituting the fraud relate to the price for the coal on which the royalties payable are based under the terms of the lease. While the complaint tells us what was false, it does not tell us what was true. The deficiency is somewhat analogous to the rule in pleading that general denials without averments of the truth are insufficiently informative, see Civil Rule 1029(b) and Goodrich Amram 2d §.1029(b): 1 and 2, and arguably violates the rule that fraud must be pleaded with particularity. Averring the true sale price on which the royalty is payable is needed in order to enable us to measure the enormity of the fraud, not only in terms of the degree of falsity in the misrepresentation, but also as to the amount of loss caused, both of which relate specifically to the question whether the fraud was severe enough to be "outrageous". While knowledge, motive and intent may be generally averred under Civil Rule 1019(b) in order to plead a deceit cause of action, such general averments are essentially conclusory, and more detail as to "who, what, when, where and how" is essential in a punitive damage claim. Also, the averment that the fraud caused "substantial" damage is indefinite and conclusory; while that may suffice for the deceit cause of action, at the pleading stage where there is no motion for more specific pleading of damages, it will not suffice where the inquiry is into the sufficiency of pleading of punitive damages, see Long v. McAllister, supra. In a claim for punitive damages, the pleader should plead all the relevant detail of which he is capable, even to the extent of pleading evidentiary details which are not otherwise required

or perhaps permitted, "chapter and verse". Compare Coleman v. Heiple (no. 4), 30 Somerset L. J. 264, 266 (1975). As we said in Weigle, supra, 39 Somerset L. J. at 126, 19 D.&C.3d at 472:

"Proof of outrageous conduct, like proof of bad faith or fraud, must establish the conclusion by clear, precise and convincing evidence. Cowden v. Aetna, supra, 472. The pleading of such matters must be of equal dignity. Sneiderman v. Kahn, 350 Pa. 496, 39 A.2d 608 (1944); Baltzer v. Shanksville-Stonycreek, 27 Somerset L. J. 161, 168 (1972). The higher degree of precision and particularity in pleading is especially essential in a punitive damages claim which opens the door to discovery and proof of defendant's financial ability and condition, which should not be permitted without crystal clear entitlement in the pleading. Spickler v. Lombardo (no. 2), 33 Somerset L. J. 340 (1977)." See also Mazzarella v. Lehigh, 49 D.&C.2d 198, 203 (1969). For the reasons stated in Weigle, we take a very strict view of pleading in a punitive damage claim.

A fair and objective reading of this complaint leads one to conclude that if its averments are true, plaintiff should be compensated for her resulting loss; but it does not at all "provoke[s] instantly a cry of abhorrence" which Weigle, quoted supra, requires. Compare Restatement (Second) Torts §46, Comment d (cited in D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company, 494 Pa. 501, 431 A.2d 966 (1981) at footnote 8), which states:

"Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Compare the full and detailed averments of outrageous conduct approved in W. W. Coal Company v. Pennsylvania

National, supra, 73, and see Kibbe v. Rohde, 285 Pa. Super. 379, 388, 427 A.2d 1163, 1168 (1981). What we said in J. Reisman and Sons, Inc. v. Snyder's Potato Chips, a Division of Curtice-Burns, 31 Somerset L. J. 77, 109 (1975), is worth noting here:

"We recognize that our view of proper pleading places a considerable burden upon the pleader in advance work and preparation. That is its virtue. It is the type of work which must usually be done sooner or later as the case moves to trial, and should be done even though the case settles. If the pleader does not carry the burden, it usually ends up being shifted, in part at least, to others, or, worse, makes for a poorly tried case putting 'us all upon an unchartered sea in a ship without a rudder, without a clear destination. The court is not available for such an expedition.' Baltzer v. Shanksville-Stonycreek, 27 Somerset L. J. 161, 173."

We also recognize that the averments of the complaint indicate that plaintiff may not have all of the evidentiary detail necessary to plead outrageousness, perhaps in part because defendants have denied her certain information. If we were dealing here merely with a motion for more specific pleading, we might accept that as an excuse for lack of specificity; but we are concerned with substantive sufficiency of the punitive damage claim; the requirements of substantive sufficiency of a pleading must be met, even though that may necessitate prepleading discovery proceedings by plaintiff. Choder v. Seven Springs, 39 Somerset L. J. 62 (1979); Civil Rule 4001(c).

Scandalous Or Impertinent Matter:

Civil Rule 1017(b)(2) provides that: "Preliminary objections are available to any party and are limited to . . . (2) a motion to strike off a pleading because of lack of comformity to law or rule of court or because

of scandalous or impertinent matter; . . . " The matter in this complaint alleged to be scandalous or impertinent is the averment of the forgery, hereinbefore referred to. In light of the fact, however, as we have already pointed out, that the forgery may conceivably be relevant to the alleged fraud as the facts unfold, we will not strike it at the present time even though it might otherwise be regarded as scandalous and impertinent. Where averments against moral character may be material to the issue, they cannot be held scandalous or impertinent. Eureka Stores v. Solomon, 33 Somerset L. J. 142 (1973).

### ORDER

Now, January 21, 1982, defendants' preliminary objections to that portion of Count two of plaintiff's complaint claiming punitive damages are sustained and said claim is stricken, provided that plaintiff is allowed 20 days to amend, if desired, to plead such claim consistent with the foregoing opinion. All other preliminary objections are overruled. If plaintiff files no such amendment within said 20 day period, defendants are allowed 20 days thereafter to file a responsive answer to the complaint.